UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CHERYL L. PETERS,

     Plaintiff,

     vs.

FOUR LUCKY GUYS, LLC a Florida
Corporation d/b/a Nightingale Nurses, and
NIGHTINGALE NURSES, LLC,

     Defendants.
_____/

## COMPLAINT

     Plaintiff, CHERYL L. PETERS (hereinafter "PETERS" or "Plaintiff"), by and through the undersigned counsel, hereby files and serves the instant Complaint against FOUR LUCKY GUYS, LLC d/b/a Nightingale Nurses and NIGHTINGALE NURSES, LLC (hereinafter collectively "NIGHTINGALE") and states as follows:

## JURISDICTION AND VENUE

     1.    This action is brought to remedy violations of law that occurred in violation of 42 U.S.C. § 1981. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. §§ 1988. This Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

     2.    PETERS is an individual citizen and resident of Palm Beach County, Florida and is within the jurisdiction of this honorable Court.

3.      NIGHTINGALE NURSES, LLC is a corporation engaged in the staffing business conducting business in Palm Beach, Florida and is within the jurisdiction of this Court.

4.      FOUR LUCKY GUYS, LLC is a corporation engaged in the staffing business conducting business in Palm Beach, Florida and is within the jurisdiction of this Court.


## PARTIES

5.      PETERS was, at all times material to this Complaint, employed by NIGHTINGALE NURSES in Palm Beach County, Florida.

6.      PETERS has retained the undersigned attorney to address the violations contained in this Complaint.

7.      NIGHTINGALE NURSES, LLC is a corporation engaged in the nursing staffing business that does business in Palm Beach County, Florida.  NIGHTINGALE NURSES, LLC has offices in Palm Beach County, Florida and employs more than fifteen (15) employees in Palm Beach County, Florida.

8.      FOUR LUCKY GUYS, LLC is a corporation engaged in the nursing staffing business that does business in Palm Beach County, Florida, has offices in Palm Beach County, Florida and employs more than fifteen (15) employees in Palm Beach County, Florida.

9.      Defendants employ or have employed fifteen or more persons during all timeframes relevant to this Complaint. Defendants are each an "employer" as defined by Fla. Stat. § 760.02(7).

10.     NIGHTINGALE NURSES, LLC and FOUR LUCKY GUYS, LLC share common ownership, management and personnel functions. NIGHTINGALE NURSES, LLC and FOUR LUCKY GUYS, LLC operate as a "single entity" or were a "joint employer" of PETERS within the meaning of the Florida Civil Rights Act and/or 42 U.S.C. § 1981.

11.     NIGHTINGALE NURSES, LLC does business as "Nightingale Nurses."

12.     FOUR LUCKY GUYS, LLC does business as "Nightingale Nurses."

13.     On or about May 1, 2014, PETERS filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) (Exh. A). The Florida Commission on Human Relations did not issue any determination with regard to the charge.

14.     More than 180-days passed after PETERS filed her charge of discrimination and the Florida Commission on Human Relations never issued a determination on the charge.

15.     All conditions precedent to filing suit have been met or have been waived.


**FACTUAL ALLEGATIONS**

16.     NIGHTINGALE NURSES is a nursing staffing agency.

17.     PETERS started working for NIGHTINGALE as a Staffing Manager in or about February 2012. Plaintiff's primary job duty was to recruit nurses for placement.

18.     On February 27, 2014, another of NIGHTINGALE's employees, Anne Loise Baker, was subjected to an incident of harassment perpetrated by another employee of NIGHTINGALE while on a plane to Las Vegas during a business trip. The other

employee tried to call Baker's attention to an actor who was depicting a Black woman picking cotton in a movie playing on the plane.  The employee also remarked to Baker "you're the reason why Nightingale does not hire black people" or words to that effect.

19.    Baker, while still in Las Vegas, decided to lodge a written complaint of harassment with NIGHTINGALE and started to gather previous e-mails pertaining to earlier incidents of harassment but was unable to do so using her telephone.  The same employee who had harassed Baker on the plane had sent Baker an e-mail with a picture of a Black woman picking cotton before and had referred to Baker as a "cotton picker" on other occasions.

20.    On February 28, 2014, Baker, while in Las Vegas, called PETERS, who was working in NIGHTINGALE's South Florida offices at the time, and asked PETERS to log into her (Baker's) email account at work in order to send Baker those earlier emails that pertained to harassment.  Baker explained to PETERS what had happened on the plane and that she felt she had been subjected to unlawful discrimination. PETERS searched through Baker's e-mail inbox but could not find the e-mail depicting the woman picking cotton.   PETERS sent Baker a few e-mails, none of which contained any confidential patient or similarly private information.

21.    Signing in to another employee's email account was not unheard of at NIGHTINGALE.  For instance, if an employee working at home or on their cell phone could not access an email, the employee working at home or on their cell would call a worker at NIGHTINGALE's offices and ask the worker to send emails or documents to assist with the work at home or in the field.   In addition, NIGHTINGALE's employees

sometimes sent business e-mails to their personal e-mail accounts for various reasons, such as to remind the employee of a certain event or task.

22.   Prior to PETERS' termination NIGHTINGALE's management was aware of at least one other worker who used an e-mail business account belonging to another employee to impersonate that employee and send a fake e-mail out to others within the company.  That employee was not terminated.

23.   On February 28, 2014, Baker, still in Las Vegas, sent an e-mail to NIGHTINGALE's management complaining of the unlawful discrimination that occurred on the plane and brought up past instances of discrimination as well. NIGHTINGALE became concerned that Baker would file a complaint of discrimination or lawsuit as a result.  NIGHTINGALE also became concerned that Baker was going to quit.

24.   NIGHTINGALE's management ordered staff employees to search the log in history for Baker's computer.  It was determined that PETERS had logged in to the system to send Baker e-mails that would assist Baker in her complaint of discrimination against NIGHTINGALE.

25.   Baker resigned on March 7, 2014 stating that she was resigning because of unlawful harassment.

26.   After Baker resigned, there was talk in the workplace about Baker's complaints of discrimination since it became commonly known what had happened in Las Vegas.  One of NIGHTINGALE's owners commented in front of others while in the workplace that Baker would not "stand a chance" with any discrimination lawsuit. PETERS replied "fair is fair, you should treat people fairly."

27.   NIGHTINGALE's human resources director testified during an unemployment hearing that NIGHTINGALE terminated because PETERS was not acting in NIGHTINGALE's "best interest" when she forwarded documents to a person whom NIGHTINGALE's management believed intended to use those documents to complain about discrimination.

28.   PETERS was terminated on March 18, 2014 as a result of her assistance to and support of Baker.

29.   PETERS was terminated because NIGHTINGALE felt that PETERS was not acting in NIGHINGALE's best interests by helping another employee make NIGHTINGALE aware of acts of unlawful discrimination so that such acts could be properly investigated by NIGHTINGALE.

30.   NIGHTINGALE fired PETERS in retaliation of her support and assistance of Baker's claim of discrimination against NIGHTINGALE.

31.   NIGHTINGALE fired PETERS in order to deter others from supporting Baker's complaints of unlawful discrimination.

## COUNT I
### 42 U.S.C. § 1981

32.   NIGHTINGALE terminated PETERS as a result of her protected activity in violation of 42 U.S.C. § 1981.

33.   The actions of NIGHTINGALE were intentional or were with reckless disregard of PETERS' civil rights under 42 U.S.C. § 1981.

34.   The actions of NIGHTINGALE as alleged herein were taken with malice and with a reckless disregard of BAKER' civil rights under 42 U.S.C. § 1981.

35.   WHEREFORE, Plaintiff PETERS asks this Court to grant the following

relief:

a.      Issue a declaratory judgment finding that NIGHTINGALE's  conduct toward PETERS violated 42 U.S.C. § 1981;

b.      Enjoin and restrain NIGHTINGALE and all other persons acting on behalf of, or in concert with them, from engaging in such unlawful practices;

c.      Enter judgment in favor of Plaintiff PETERS and against NIGHTINGALE for backpay, reinstatement or front pay in lieu of reinstatement in the amount of wages and fringe benefits it is determined that Plaintiff PETERS has lost as a result of NIGHTINGALE's unlawful conduct, together with prejudgment interest from the date of the violations;

d.      Enter judgment in favor of Plaintiff PETERS and against NIGHTINGALE for compensatory and punitive damages pursuant to federal statutes, including 42 U.S.C. § 1981a, together with pre-judgment interest;

e.      Award Plaintiff PETERS a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988, with the costs of this action; and

f.      Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of Plaintiff PETERS' rights, to prevent reoccurrence of similar acts in the future and to protect NIGHTINGALE's other employees from such unlawful behavior.

## COUNT II

### FLORIDA CIVIL RIGHTS ACT

5.      NIGHTINGALE, acting through its agent(s), terminated PETERS because of her support of Baker's claims and the assistance that she provided to Baker in Baker's

efforts to gather information and lodge a complaint with NIGHTINGALE in violation of the Florida Civil Rights Act, including Fla. Stat. § 760.10(7).

      6.     The actions of NIGHTINGALE as alleged herein were intentional.

      7.     The actions of NIGHTINGALE as alleged herein were taken with malice or with a reckless disregard of PETERS civil rights.

      WHEREFORE, PETERS asks this Court to grant the following relief:

      a.     Issue a declaratory judgment finding that NIGHTINGALE conduct toward PETERS violated the Florida Civil Rights Act;

      b.     Enjoin and restrain NIGHTINGALE and all other persons acting on behalf of, or in concert with them, from engaging in such unlawful practices;

      c.     Enter judgment in favor of PETERS and against NIGHTINGALE together with prejudgment interest from the date of the violation, if available;

      d.     Enter judgment in favor of PETERS and against NIGHTINGALE for compensatory (pain and suffering, pecuniary and non-pecuniary damages, mental anguish, loss of dignity and other intangible) damages, back pay, front pay and punitive damages pursuant to Fla. Stat. § 760.11 together with pre-judgment interest;

      e.     Award PETERS a reasonable attorney's fee, pursuant to the Florida Civil Rights Act, Fla. Stat. § 760.11 together with the costs of this action; and

      f.     Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of PETERS's rights, to prevent reoccurrence of similar acts in the future and to protect NIGHTINGALE other employees from such unlawful behavior.

## JURY DEMAND

PETERS demands trial by jury on all issues so triable.

Respectfully submitted,

GARY A. COSTALES, P.A.
1200 Brickell Avenue, Suite 1230
Miami, Florida 33131
(305) 375-9510
(305) 375-9511 (facsimile)


/s Gary A. Costales
Gary A. Costales, Esq.
Florida Bar No. 0948829